**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ThinkOptics, Inc.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Nintendo of America, Inc.; Nintendo Co.,** | § | |
| **Ltd.; Intec, Inc.; NYKO Technologies,** | § | |
| **Inc.; Imation Corp.; DB Roth, Inc.;** | § | **CIVIL ACTION NO. _____** |
| **JacobsParts, Inc.; Wal-Mart Stores, Inc.;** | § | |
| **Wal-Mart Stores Texas, LLC; Sam's** | § | **JURY TRIAL DEMANDED** |
| **East, Inc.; Sam's West, Inc.; GameStop** | § | |
| **Corp.; RadioShack Corporation; J.C.** | § | |
| **Penney Company, Inc.; Conn Appliances,** | § | |
| **Inc.; Terminal Reality, Inc.; and Gearbox** | § | |
| **Software, LLC,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |

---

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

---

COMES NOW Plaintiff ThinkOptics, Inc., and files this Original Complaint against

Defendants Nintendo of America, Inc.; Nintendo Co., Ltd.; Intec, Inc.; Nyko Technologies, Inc.;

Imation Corp.; DB Roth, Inc.; JacobsParts, Inc.; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas,

LLC; Sam's East, Inc.; Sam's West, Inc.; GameStop Corp.; RadioShack Corporation; J.C.

Penney Company, Inc.; Conn Appliances, Inc.; Terminal Reality, Inc.; and Gearbox Software,

LLC, alleges as follows:

### I. NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## II. JURISDICTION AND VENUE

2.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  The Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over patent actions).

3.      Personal jurisdiction exists generally over Defendants pursuant to 28 U.S.C. § 1391 because they have sufficient minimum contacts within the forum as a result of business conducted within the State of Texas and within this District.  Personal jurisdiction also exists specifically over Defendants because of Defendants' conduct in making, using, selling, offering to sell, and/or importing directly or indirectly infringing products or services, and/or Defendants' contributory infringement or inducement of infringement within the State of Texas and within this District.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), for the reasons set forth above.  Furthermore, venue is proper because Defendants actively marketed the infringing works within this District.  Each act of Defendants' directly or indirectly infringing conduct in this District gives rise to proper venue.

## III. THE PARTIES

### Plaintiff:

5.      Plaintiff **ThinkOptics, Inc. ("ThinkOptics" or "Plaintiff")** is a corporation organized and existing under the laws of the State of California that maintains its principal place of business at 5568 Del Oro Drive, San Jose, California 95124-6114.

**Defendants:**

**Nintendo Defendants:**

6.      Defendant **Nintendo of America, Inc.,** is a corporation organized and existing under the laws of the State of Washington that maintains its principal place of business at 4820 150th Avenue NE, Redmond, Washington 98052-5111. It may be served via its registered agent, CT Corporation System, at 350 N. Saint Paul St., Suite 2900, Dallas, Texas 75201-4234.

7.      Defendant **Nintendo Co., Ltd.,** is a corporation organized and existing under the laws of Japan that maintains its principal place of business in Kyoto, Japan. It may be served via its Officers and/or Directors at its corporate headquarters at 11-1 Kamitoba Hokotate-Cho, Minami-Ku, Kyoto, Japan, 601-8501. Defendant Nintendo of America, Inc., is a wholly owned subsidiary of Nintendo Co., Ltd.

8.      Defendants **Nintendo of America, Inc.,** and **Nintendo Co., Ltd.,** are hereinafter collectively referred to as the **Nintendo Defendants** or **Nintendo.**

**Other Manufacturer Defendants:**

9.      Defendant **Intec, Inc. ("Intec")** is a corporation organized and existing under the laws of the State of Florida that maintains its principal place of business at 7600 NW 19th Street, Suite 400, Miami, Florida 33126-1219, and may be served at this address.

10.      Defendant **NYKO Technologies, Inc. ("Nyko")** is a corporation organized and existing under the laws of the State of California that maintains its principal place of business at 1990 Westwood Blvd., 3rd Floor, Los Angeles, California 90025, and may be served at this address.

11.      Defendant **Imation Corp. ("Imation")** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 1 Imation

Way, Saint Paul, Minnesota 55128-3421, and may be served at this address. Imation sells products under at least the brand name "Memorex."

12.     Defendant **DB Roth, Inc. ("DB Roth")** is a corporation organized and existing under the laws of the State of New York that maintains its principal place of business at 2 Bergen Turnpike, Ridgefield Park, New Jersey 07660-2340, and may be served at this address.

13.     Defendant **JacobsParts, Inc. ("JacobsParts")** is a corporation organized and existing under the laws of the State of Indiana that maintains its principal place of business at 5601 Fortune Circle South, Suite B, Indianapolis, Indiana 46241-5533, and may be served at this address.

14.     Defendants **Intec, NYKO, Imation, DB Roth, and JacobsParts** are sometimes hereinafter collectively referred to as the **Other Manufacturer Defendants.**

**Retail Defendants:**

15.     Defendant **Wal-Mart Stores, Inc.** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716, and may be served at this address.

16.     Defendant **Wal-Mart Stores Texas, LLC** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716, and may be served at this address.

17.     Defendants **Wal-Mart Stores, Inc.,** and **Wal-Mart Stores Texas, LLC,** are hereinafter collectively referred to as the **Wal-Mart Defendants** or **Wal-Mart.**

18.     Defendant **Sam's East, Inc.** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 702 SW 8th Street,

Bentonville, Arkansas 72716, and may be served via its registered agent, CT Corporation Systems, Inc., 350 North Saint Paul Street, Dallas, Texas 75201.

19.     Defendant **Sam's West, Inc.** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716, and may be served via its registered agent, CT Corporation Systems, Inc., 350 North Saint Paul Street, Dallas, Texas 75201.

20.     Defendants **Sam's East, Inc.,** and **Sam's West, Inc.** are hereinafter collectively referred to as **Sam's Club.**

21.     Defendant **GameStop Corp. ("GameStop")** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 625 Westport Parkway, Grapevine, Texas 76051, and may be served at this address.

22.     Defendant **RadioShack Corporation ("RadioShack")** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 2727 West 7th Street Stop 5022, Fort Worth, Texas, 76107-2218, and may be served at this address.

23.     Defendant **J.C. Penney Company, Inc. ("J.C. Penney")** is a corporation organized and existing under the laws of the State of Delaware that maintains its principal place of business at 6501 Legacy Drive, Plano, Texas 75024-3612, and may be served at this address.

24.     Defendant **Conn Appliances, Inc. ("Conn's")** is a corporation organized and existing under the laws of the State of Texas that maintains its principal place of business at 3295 College Street, Beaumont, Texas 77701-4611, and may be served at this address.

25.     Defendants **Wal-Mart, Sam's Club, GameStop, RadioShack, J.C. Penney, and Conn's** are sometimes hereinafter collectively referred to as the **Retail Defendants.**

**Game Defendant:**

26.     Defendant **Terminal Reality, Inc. ("Terminal Reality")** is a corporation organized and existing under the laws of the State of Texas that maintains its principal place of business at 2274 Rockbrook Drive, Lewisville, Texas 75067-3894, and may be served at this address.

27.     Defendant **Gearbox Software, LLC ("Gearbox")** is a corporation organized and existing under the laws of the State of Texas that maintains its principal place of business at 101 East Park Blvd., Suite 1200, Plano, Texas 75074-8826, and may be served at this address.

28.     Defendants **Terminal Reality** and **Gearbox** are sometimes hereinafter collectively referred to as the **Game Defendants.**

## IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Patents at Issue:

29.     This cause of action asserts infringement of United States Patent No. 7,796,116 ("the '116 Patent"), United States Patent No. 7,852,317 ("the '317 Patent"), and United States Patent No. 7,864,159 ("the '159 Patent") (collectively, "the Patents-in-Suit").

30.     The '116 Patent, entitled "Electronic Equipment for Handheld Vision Based Absolute Pointing System," duly and legally issued on September 14, 2010, from U.S. Patent Application Serial No. 11/187,405, filed on July 21, 2005, naming as inventors Kenneth Salsman, John Sweetser, and Anders Grunnet-Jepsen. A true and correct copy of the '116 Patent is attached hereto as Exhibit A.

31.     The '116 Patent claims priority to Provisional Patent Application No. 60/593,413, filed January 12, 2005.

---

32.     The '317 Patent, entitled "Handheld Device for Handheld Vision Based Absolute Pointing System," duly and legally issued on December 14, 2010, from U.S. Patent Application Serial No. 11/187,387, filed on July 21, 2005, naming as inventors Anders Grunnet-Jepsen, Kenneth Salsman, and John Sweetser. A true and correct copy of the '317 Patent is attached hereto as Exhibit B.

33.     The '317 Patent claims priority to Provisional Patent Application No. 60/593,413, filed January 12, 2005.

34.     The '159 Patent, entitled "Handheld Vision Based Absolute Pointing System," duly and legally issued on January 4, 2011, from U.S. Patent Application Serial No. 11/187,435, filed on July 21, 2005, naming as inventors John Sweetser, Anders Grunnet-Jepsen, and Kenneth Salsman.  A true and correct copy of the '159 Patent is attached hereto as Exhibit C.

35.     The '159 Patent claims priority to Provisional Patent Application No. 60/593,413, filed January 12, 2005.

36.     The inventions disclosed and claimed in the Patents-in-Suit were conceived and reduced to practice prior to the application filing date of each patent. ThinkOptics is therefore entitled to rely on an invention date for each of the Patents-in-Suit that predates the actual filing date.

37.     Plaintiff ThinkOptics, Inc., is the owner as assignee of all rights, title, and interest in and under the '116 Patent, the '317 Patent, and the '159 Patent.

38.     ThinkOptics has standing to sue for infringement of the '116 Patent, the '317 Patent, and the '159 Patent.

39.     ThinkOptics manufactures and sells one or more products that embody one or more claims of each of the Patents-in-Suit.

40.   ThinkOptics has and continues to mark products that it manufactures and sells under the Patents-in-Suit, including the Wavit™ and the iWavit™ products.

**ThinkOptics:**

41.   ThinkOptics is a technology company based in San Jose, California. It has developed ground-breaking visual detection and tracking technologies to enhance user experiences related to at least TV, the Internet, and Video Gaming systems. ThinkOptics's technological innovations have been granted patent protection by the United States Patent and Trademark Office, and are embodied in products manufactured and sold by ThinkOptics, including the Wavit™ and iWavit™ remote control devices.

42.   The Wavit™ is a handheld wireless remote control that detects infrared light emitted from a source, such as a sensor bar. The iWavit™ is a newer product that comprises a plug-in adapter for all iDevices (*e.g.*, iPhone, iPod Touch, or iPad). The iWavit™ allows the iDevice to serve as a remote control and provides at least the same functional capabilities as the Wavit™.

43.   ThinkOptics's patented technology includes the use of a remote sensor to detect infrared light emitted from a source, such as a sensor bar, and the processing of the data (including the intensity of the detected light and relative positioning) to determine where the remote control is pointing.

44.   ThinkOptics released its Wavit™ demonstration kits in Fall 2006.

45.   ThinkOptics's first public display of the Wavit™ device and technology was at the 2006 iHollywood Forum's Digital Living Room Conference in Foster City, California, on December 5th and 6th, 2006. As a result of the presentation, ThinkOptics was awarded the "Fantasy $1 Million Investment" by the conference audience.

46.     ThinkOptics presented the Wavit$^{TM}$ technology and conducted a product demonstration at the 2007 Consumer Electronics Show in Las Vegas, Nevada, on January 8–11, 2007.

47.     In May 2007, the Wavit$^{TM}$ received FCC Certification and became available for purchase from ThinkOptics's website, www.thinkoptics.com.

48.     On November 13, 2007, The Wavit$^{TM}$ 3D Media-PC Remote Control won the Consumer Electronics Show 2008 Innovations Design and Engineering Showcase Honors Award.

49.     ThinkOptics presented its products again at the 2008 Consumer Electronics Show in Las Vegas, Nevada, on January 7–11, 2008.

50.     In September of 2009, the iWavit$^{TM}$ was chosen as one of eleven finalists in the CEA-sponsored i-Stage competition for 2009.

51.     ThinkOptics demonstrated the iWavit$^{TM}$ at the Consumer Electronics Show in Las Vegas, Nevada, on January 7–10, 2010.

52.     In August 2010, the first iWavit$^{TM}$ applications became available for download from the Apple Store.

53.     On December 11, 2010, ThinkOptics officially released the iWavit$^{TM}$. The iWavit$^{TM}$ Premium Kit became available for purchase from www.iWavit.com and Amazon.com.

54.     ThinkOptics demonstrated the iWavit$^{TM}$ Premium Kit at the MacWorld Expo in San Francisco, California, on January 27–29, 2011. All available inventory of the iWavit$^{TM}$ Premium Kit was sold during the Expo.

55.     By April 2011, consumers had downloaded more than 300,000 iWavit$^{TM}$ Apps.

**<u>Infringement:</u>**

56.     Each Defendant named in this lawsuit is liable for infringing one or more claims of each of the Patents-in-Suit.

**Infringement by Nintendo Defendants:**

57.     The allegations contained in paragraphs 1–56 above are incorporated by reference as if fully set forth herein.

58.     The Nintendo Defendants are liable for making, using, selling, offering to sell, and/or importing the Wii™ gaming system and Wii™ Remote video game controllers, sensor bars, and games (*e.g.*, the Mario family of Wii™ games) that are designed to be used with the Nintendo Wii™ gaming system, which infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit.

59.     Upon information and belief, the Nintendo Defendants have also made, used, and imported an infringing system known as the Wii U™, which incorporates technology that infringes, is used to infringe, or is adapted to infringe one or more claims of each of the Patents-in-Suit. Upon further information and belief, the Nintendo Defendants have or plan to sell and/or offer for sale the Wii U™.

60.     Nintendo's Wii™ gaming system uses, without ThinkOptics's permission, ThinkOptics's infrared sensor-based motion tracking technology to enable the motion gaming features that have made the system very popular with consumers since its introduction. The Wii™ system includes a sensor bar that emits infrared light, which is detected by a CMOS sensor and imaging lens inside the Wii™ Remote (sometimes known as a "Wiimote"). The Wii™ gaming console uses data transmitted from the Wii™ Remote—including relative positioning and intensity of the detected infrared light—to calculate the location on the video screen where the Wii™ Remote is pointing. Nintendo's Wii™ system and Wii™ Remote video game

controllers and sensor bars that are designed to be used with the Nintendo Wii$^{TM}$ gaming system infringe and/or are used to infringe at least one claim of each of the Patents-in-Suit.

61.     On May 26, 2006, United States Patent Application Serial No. 11/441,146 ("the '146 Application") was filed at the United States Patent & Trademark Office ("USPTO"), naming Hideya Akasaka and Yuki Takahashi as inventors, and naming Defendant Nintendo Co., Ltd. as assignee. The '146 Application published as United States Patent Application Publication No. US 2007/0060228 A1 ("Nintendo '146 Application") on March 15, 2007.

62.     On November 26, 2010, the USPTO issued an Office Action including a non-final rejection of one or more claims of the '146 Application.

63.     The USPTO rejected Claims 1, 2, 3, 10–12, 19–21, 27, 28, 32, 44, 45, 53, 54, 61, 77, 78, 85, 86, 103, and 104 under 35 U.S.C. § 103(a) as being "unpatentable over [the '116 Patent]."

64.     On May 11, 2011, the USPTO issued an Office Action including a Final Rejection of one or more claims of the '146 Application.

65.     The USPTO rejected Claims 1–3, 10–12, 19–21, 27, 28, 32, 44, 45, 52–54, 60, 61, 64, 65, 77–78, 85–86, 91, 103, and 104 under 35 U.S.C. § 103(a) as being "unpatentable over [the '116 Patent]."

66.     On September 19, 2006, United States Patent Application Serial No. 11/522,997 ("the '997 Application") was filed at the United States Patent & Trademark Office ("USPTO"), naming Keizo Ohta as inventor, and naming Defendant Nintendo Co., Ltd. as assignee. The '997 Application published as United States Patent Application Publication No. US 2007/0211027 A1 ("Nintendo '997 Application") on September 13, 2007.

67.     On January 8, 2009, the USPTO issued an Office Action including a non-final rejection of all pending claims of the '997 Application.

68.     The USPTO rejected Claims 1, 2, 3, 11, 12, 13, 14, 16, 17, 18, 26, 27, 28, and 29 under 35 U.S.C. § 102(e) "as being anticipated by Salsman et al. [the application that resulted in the '116 Patent]."

69.     The USPTO rejected Claims 4, 5, 6, 7, 8, 9, 10, 15, 19, 20, 21, 22, 23, 24, 25, 28, and 30 under 35 U.S.C. § 103(a) as being "unpatentable over [the '116 Patent]." (in view of Gossweiler, III et al. (U.S. Patent No. 7,379,078).

70.     On June 9, 2009 the USPTO issued an Office Action including a Final Rejection of all pending claims of the '997 Application based on the grounds of being anticipated by, or obvious in light of, the '116 Patent.

71.     After the applicant requested continued examination of the '997 Application and amended the claims, all pending claims were again rejected by the USPTO under 35 U.S.C. § 103(a) as unpatentable over Salsman.  This rejection was made final in an Office Action on November 15, 2010.  After further amendment, Applicant filed an appeal brief on June 30, 2011.

72.     One or more rejected claims of the '146 and '997 Applications included features disclosed in the '116 Patent.

73.     One or more rejected claims of the '146 and '997 Applications included features claimed in the '116 Patent.

74.     One or more rejected claims of the '146 and '997 Applications included every element of at least one claim in the '116 Patent.

75.     Nintendo manufactures one or more products that represent embodiment(s) of the invention disclosed in the '146 and '997 Applications.

**Infringement by Other Manufacturer Defendants:**

76.     The allegations contained in paragraphs 1–75 above are incorporated by reference as if fully set forth herein.

77.     Each of the Other Manufacturer Defendants is liable for selling, offering to sell, and/or importing products that are used to infringe one or more claims of each of the Patents-in-Suit.

78.     The Other Manufacturer Defendants make, use, sell, offer for sale, and/or import devices such as video game controllers and sensor bars that are designed to be fully compatible with the Nintendo Wii$^{TM}$ gaming system and have no substantial non-infringing uses.

79.     Defendant Intec makes, uses, sells, offers for sale, and/or imports devices that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including but not limited to remote, hand-held devices adapted to serve as remote controls for the Nintendo Wii. The products manufactured by Intec are compatible with certain Nintendo products but, upon information and belief, are not subject to a license agreement with Nintendo.

80.     Defendant Nyko makes, uses, sells, offers for sale, and/or imports devices that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including but not limited to remote, hand-held devices adapted to serve as remote controls for the Nintendo Wii and sensor bars that are compatible with the Nintendo Wii. The products manufactured by Nyko are compatible with certain Nintendo products but, upon information and belief, are not subject to a license agreement with Nintendo.

81.     Defendant Imation makes, uses, sells, offers for sale, and/or imports devices that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including but not limited to remote, hand-held devices adapted to serve as remote controls for the Nintendo

Wii. The products manufactured by Imation are compatible with certain Nintendo products but, upon information and belief, are not subject to a license agreement with Nintendo.

82.     Defendant DB Roth makes, uses, sells, offers for sale, and/or imports devices that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including but not limited to remote, hand-held devices adapted to serve as remote controls for the Nintendo Wii. The products manufactured by DB Roth are compatible with certain Nintendo products but, upon information and belief, are not subject to a license agreement with Nintendo.

83.     Defendant JacobsParts makes, uses, sells, offers to sell, and/or imports devices that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including but not limited to remote, hand-held devices adapted to serve as remote controls for the Nintendo Wii. The products manufactured by JacobsParts are compatible with certain Nintendo products but, upon information and belief, are not subject to a license agreement with Nintendo.

**Infringement by Retail Defendants:**

84.     The allegations contained in paragraphs 1–83 above are incorporated by reference as if fully set forth herein.

85.     Each of the Retail Defendants is liable for selling, offering to sell, and/or importing products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit.

86.     The Retail Defendants sell, offer for sale, and/or import products that are manufactured by the Nintendo Defendants such as the Wii$^{TM}$ gaming system, remote controllers, sensor bars, games, and/or other products that infringe or are used to infringe, such as Wii$^{TM}$-compatible controllers, sensor bars, and games that are manufactured by other parties, including the Other Manufacturer Defendants and Game Defendants, as described below.

87.     The Wal-Mart Defendants use, sell, offer to sell, and/or import products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least products manufactured by Power A (the retail consumer products brand of Bensussen Deutsch & Associates, Inc.), dreamGEAR, LLC, Polaroid Corporation, and Defendants Nyko, Intec, and Nintendo. The infringing uses and sales occur in this District, the State of Texas, and in various other states in the United States.

88.     The Sam's Club Defendants sell, offer to sell, and/or import products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least products manufactured by Defendants Imation (under the brand name Memorex), Nyko, Intec, and Nintendo. The infringing sales occur in this District, the State of Texas, and in various other states in the United States.

89.     Defendant GameStop uses, sells, offers to sell, and/or imports products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least products manufactured by Performance Design Products, LLC, and Defendants Nyko, Nintendo, Gearbox, and Terminal Reality. The infringing uses and sales occur in this District, the State of Texas, and in various other states in the United States.

90.     Defendant RadioShack sells, offers to sell, and/or imports products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least products manufactured by dreamGEAR, LLC, Performance Design Products, LLC, and Defendants Intec, Nyko, Nintendo, and Gearbox. The infringing sales occur in this District, the State of Texas, and in various other states in the United States.

91.     Defendant J.C. Penney sells, offers to sell, and/or imports products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least

products manufactured by Defendant Nintendo. The infringing sales occur in this District, the State of Texas, and in various other states in the United States.

92. Defendant Conn's sells, offers to sell, and/or imports products that infringe and/or are used to infringe one or more claims of each of the Patents-in-Suit, including at least products manufactured by Defendant Nintendo. The infringing sales occur in this District, the State of Texas, and in various other states in the United States.

### Infringement by Game Defendants:

93. The allegations contained in paragraphs 1–92 above are incorporated by reference as if fully set forth herein.

94. Defendant Terminal Reality is liable for making, using, selling, and/or offering to sell products, including games (*e.g.*, "Ghostbusters: The Video Game"), that infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit.

95. Defendant Gearbox is liable for making, using, selling, and/or offering to sell products, including games (*e.g.*, "Brothers in Arms: Double Time"), that infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit.

### <u>Willfulness</u>:

96. The allegations contained in paragraphs 1–95 above are incorporated by reference as if fully set forth herein.

97. Each Defendant is liable for willfully infringing one or more claims of each of the Patents-in-Suit.

### Knowledge of Patents at Issue:

98.     Each Defendant had actual or constructive knowledge of ThinkOptics before the filing of this lawsuit.

99.     Each Defendant had actual or constructive knowledge of each of the Patents-in-Suit before the filing of this lawsuit.

100.    Nintendo had knowledge of ThinkOptics and its patents through its own patent prosecution activities as discussed in paragraphs 61–71, above

101.    In December of 2006, ThinkOptics contacted Nintendo and informed them of ThinkOptics's technology and its pending patent applications, which resulted in the Patents-in-Suit.

102.    ThinkOptics has and continues to mark its products sold under the Patents-in-Suit, giving all Defendants at least constructive knowledge of the Patents-in-Suit.

**Objective Likelihood of Infringement:**

103.    There is an objective likelihood that one or more Nintendo Defendant products infringe at least one claim of each of the Patents-in-Suit.

104.    The rejection of the '146 and '997 Applications—assigned to Nintendo Co., Ltd.—based on the '116 Patent—is objective evidence that one or more of the Nintendo Defendants' products likely infringed or infringes at least one claim of at least the '116 Patent.

105.    There is an objective likelihood that one or more Intec Defendant products infringe at least one claim of each of the Patents-in-Suit.

106.    There is an objective likelihood that one or more Nyko Defendant products infringe at least one claim of each of the Patents-in-Suit.

107.    There is an objective likelihood that one or more Imation Defendant products infringe at least one claim of each of the Patents-in-Suit.

108.    There is an objective likelihood that one or more DB Roth Defendant products infringe at least one claim of each of the Patents-in-Suit.

109.    There is an objective likelihood that one or more JacobsParts Defendant products infringe at least one claim of each of the Patents-in-Suit.

110.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by the Wal-Mart Defendants infringe at least one claim of each of the Patents-in-Suit.

111.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by Sam's Club infringe at least one claim of each of the Patents-in-Suit.

112.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by GameStop infringe at least one claim of each of the Patents-in-Suit.

113.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by RadioShack infringe at least one claim of each of the Patents-in-Suit.

114.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by J.C. Penney infringe at least one claim of each of the Patents-in-Suit.

115.    There is an objective likelihood that one or more products used, sold, offered for sale, and/or imported by Conn's infringe at least one claim of each of the Patents-in-Suit.

116.    There is an objective likelihood that one or more Terminal Reality products infringe at least one claim of each of the Patents-in-Suit.

117.    There is an objective likelihood that one or more Gearbox products infringe at least one claim of each of the Patents-in-Suit.

**Subjective Knowledge of Risk:**

118.    The Nintendo Defendants knew or should have known of the objective risk of infringement discussed in Paragraphs 103 and 104, above.

119.    The rejection of the '146 and '997 Applications—assigned to Nintendo Co., Ltd.—based on the '116 Patent is proof that the Nintendo Defendants knew or should have known of the objective risk that one or more of their products infringed at least one claim of at least the '116 Patent.

120.    The Intec Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 105 above.

121.    The Nyko Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 106 above.

122.    The Imation Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 107 above.

123.    The DB Roth Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 108 above.

124.    The JacobsParts Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 109 above.

125.    The Wal-Mart Defendants knew or should have known of the objective risk of infringement discussed in Paragraph 110 above.

126.    The Sam's Club Defendants knew or should have known of the objective risk of infringement discussed in Paragraph 111 above.

127.    The GameStop Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 112 above.

128.    The RadioShack Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 113 above.

129.    The J.C. Penney Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 114 above.

130.    The Conn's Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 115 above.

131.    The Terminal Reality Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 116 above.

132.    The Gearbox Defendant knew or should have known of the objective risk of infringement discussed in Paragraph 117 above.

### Damages:

133.    The allegations contained in paragraphs 1–132 above are incorporated by reference as if fully set forth herein.

134.    Each of Defendants' acts of infringement has caused damage to ThinkOptics.

135.    Each Defendant is liable to ThinkOptics for such infringement, and as a result, ThinkOptics seeks recovery of the following damages under 35 U.S.C. § 284:

### Lost Profits:

136.    ThinkOptics is in the business of manufacturing and selling products that represent embodiments of each of the Patents-in-Suit. ThinkOptics contends that, but for Defendants' infringement, ThinkOptics would have made additional profits. ThinkOptics accordingly seeks recovery of those lost profits under 35 U.S.C. § 284.

### Reasonable Royalty:

137.    Further and in the alternative, ThinkOptics seeks damages to adequately compensate it for Defendants' infringement of the Patents-in-Suit. Such damages should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

**Enhanced Damages, Attorneys' Fees, and Expenses:**

138.    Based on information and belief, ThinkOptics contends that Defendants' acts of infringement have been and are willful. Therefore, under 35 U.S.C. § 284, ThinkOptics seeks a finding of willfulness and recovery of enhanced damages up to three times the amount of damages found by the trier of fact. ThinkOptics further seeks recovery of its reasonable attorneys' fees and expenses under 35 U.S.C. § 285.

## V. CLAIMS FOR RELIEF

139.    The allegations contained in paragraphs 1–138 above are incorporated by reference as if fully set forth herein.

140.    Based on the above-described services and products, Plaintiff asserts several causes of action against the Defendants. These causes of action are detailed as follows.

141.    Upon information and belief, each Defendant named herein manufactures, uses, sells, offers for sale, and/or imports one or more products that: (1) embody one or more claims of each of the Patents-in-Suit; (2) were manufactured using the method of one or more claims of each of the Patents-in-Suit; and/or (3) are used in a method of one or more claims of each of the Patents-in-Suit, without license from ThinkOptics, in the Eastern District of Texas and throughout the United States.

142.    By manufacturing, using, selling, offering for sale, and/or importing the accused products, the Nintendo Defendants and each Retail Defendant has directly infringed, and will

continue to directly infringe, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

    a.  The Nintendo Defendants have directly infringed at least by manufacturing, using, selling, offering for sale, and/or importing the Wii™ system.

    b.  The Retail Defendants have directly infringed at least by using, selling, offering for sale, and/or importing the Wii™ system.

143.   By selling, offering for sale, and/or importing the accused products, each Defendant has contributorily infringed, and will continue to contributorily infringe, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (c) and/or (f) literally and/or under the doctrine of equivalents.

    a.  With pre-suit knowledge of the Patents-in-Suit, the Nintendo Defendants have contributorily infringed at least by selling, offering for sale, and/or importing accessories and replacement devices adapted for use with the infringing Wii™ gaming system, such as remote controllers and sensor bars and games designed for use with the Wii™ gaming system, all of which infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit. They have contributed to the direct infringement by retailers who sell, offer for sale, and/or import the Wii™ gaming system, including the Retail Defendants, and by consumer users of the Wii™ gaming system.

    b.  With pre-suit knowledge of the Patents-in-Suit, the Other Manufacturer Defendants have contributorily infringed at least by selling, offering for sale, and/or importing accessories and replacement devices adapted for use with the

infringing Wii[TM] gaming system, such as remote controllers, sensor bars, and games that infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit. They have contributed to the direct infringement by retailers who sell, offer for sale, and/or import the Wii[TM] gaming system, including the Retail Defendants, and by consumer users of the Wii[TM] gaming system.

c.  With pre-suit knowledge of the Patents-in-Suit, the Retail Defendants have contributorily infringed at least by selling, offering for sale, and/or importing accessories and replacement devices adapted for use with the infringing Wii[TM] gaming system, such as remote controllers and sensor bars and games designed for use with the Wii[TM] gaming system, all of which infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit. They have contributed to the direct infringement by consumer users of the Wii[TM] gaming system.

d.  With pre-suit knowledge of the Patents-in-Suit, the Game Defendants have contributorily infringed at least by selling and/or offering for sale video games designed for the infringing Wii[TM] gaming system that infringe, are used to infringe, and/or are especially adapted to infringe with no substantial non-infringing use, one or more claims of each of the Patents-in-Suit. They have contributed to the direct infringement by consumer users of the Wii[TM] gaming system.

144.    Each of the Defendants has also induced infringement of, and will continue to induce infringement of, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (b) and/or (f) literally and/or under the doctrine of equivalents.

      a.   The Nintendo Defendants have induced infringement of, and will continue to induce infringement of, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (b) and/or (f), literally and/or under the doctrine of equivalents through, among other activities, providing infringing products and/or products that are used to infringe to consumers without authority and instructing those consumers how to use the infringing Wii$^{TM}$ system, and inducing the Retail Defendants to use, sell, and offer to sell infringing products, as discussed above.

      b.   Each Other Manufacturer Defendant has also induced infringement of, and will continue to induce infringement of, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (b) and/or (f), literally and/or under the doctrine of equivalents through, among other activities, providing infringing products and/or products that are used to infringe to consumers without authority and instructing those consumers how to use the infringing Wii$^{TM}$ system, and inducing the Retailer Defendants to use, sell, and offer to sell infringing products, as discussed above.

      c.   Each Retail Defendant has also induced infringement of, and will continue to induce infringement of, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (b) and/or (f), literally and/or under the doctrine of equivalents through, among other activities, providing infringing products and/or products

Case 6:11-cv-00455-LED   Document 1   Filed 09/02/11   Page 25 of 27 PageID #:  25

that are used to infringe to consumers without authority and instructing those consumers how to use the infringing Wii<sup>TM</sup> system.

d. Each Game Defendant has also induced infringement of, and will continue to induce infringement of, one or more claims of each of the Patents-in-Suit under 35 U.S.C. § 271 (b) and/or (f), literally and/or under the doctrine of equivalents through, among other activities, providing infringing products and/or products that are used to infringe to consumers without authority and instructing those consumers how to use the infringing Wii<sup>TM</sup> system.

145.    As a direct and proximate consequence of the acts and practices of each of the Defendants, ThinkOptics has been, is being, and will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

146.    Upon information and belief, each of Defendants' infringement of each of the Patents-in-Suit has been, is, and will continue to be willful and deliberate.

## VI. DAMAGES ON ALL CLAIMS FOR RELIEF

147.    The allegations contained in paragraphs 1–146 above are incorporated by reference as if fully set forth herein.

148.    Plaintiffs are entitled to and pray for relief on all claims as follows:

a. A judgment that each of the Patents-in-Suit is infringed, directly and/or indirectly, either literally and/or under the doctrine of equivalents, by Defendants as described herein;

b. A judgment and order preliminarily and permanently enjoining each Defendant, its agents, employees, representatives, successors and assigns, and those acting in

privity or in concert with them, from further direct infringement, contributory infringement, and/or inducing infringement of the each of the Patents-in-Suit in accordance with 35 U.S.C. § 283;

c.  A judgment and order requiring each Defendant to pay ThinkOptics damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting as needed;

d.  A judgment and order requiring each Defendant to pay ThinkOptics pre-judgment and post-judgment interest on the damages awarded;

e.  A judgment and order finding this case to be an exceptional case and requiring each Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285;

f.  Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury on each claim for relief alleged in this Complaint.

Dated: September 2, 2011.

Respectfully submitted,

**D. NEIL SMITH**, Attorney in Charge
STATE BAR NO. 00797450
**ANTHONY BRUSTER**
STATE BAR NO. 24036280
**EDWARD CHIN**
STATE BAR NO. 50511688
**NICOLE REED KLIEWER**

STATE BAR NO. 24041759
**ANDREW J. WRIGHT**
STATE BAR NO. 24063927
**EDWARD B. CLOUTMAN, IV**
STATE BAR NO. 24074045
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
dneilsmith@mac.com
akbruster@me.com
edchin@me.com
nicolekliewer@nixlawfirm.com
andrewjwright@me.com
edcloutman@nixlawfirm.com

**DEREK GILLILAND**
STATE BAR NO. 24007239
**NIX PATTERSON & ROACH, L.L.P.**
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.5389 (facsimile)
dgilliland@nixlawfirm.com

**STEVEN H. SLATER**
STATE BAR NO. 00784985
**NATALIE SWIDER**
STATE BAR NO. 24063211
**ADAM C. DAVENPORT**
STATE BAR NO. 24065117
**SLATER & MATSIL, L.L.P.**
17950 Preston Road, Suite 1000
Dallas, Texas 75252
972.732.1001 (telephone)
972.732.9218 (facsimile)
slater@slater-matsil.com
swider@slater-matsil.com
davenport@slater-matsil.com

**ATTORNEYS FOR PLAINTIFF
THINKOPTICS, INC.**