# EXHIBIT "1"



1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Grant E. Kinsel
PHONE: (206) 359-3516
EMAIL: GKinsel@perkinscoie.com

May 13, 2013

*VIA ECF*

The Honorable Leonard Davis
Chief District Judge
U.S. District Court for the Eastern District of Texas
200 W. Ferguson, Third Floor
Tyler, TX 75702

Re:   ***ThinkOptics, Inc. v. Nintendo of America Inc., et al.***
    ***Case No. 6:11-cv-00455-LED***

Dear Judge Davis:

Nintendo of America Inc. and Nintendo Co., Ltd. ("Nintendo") respectfully request permission to file a Motion for Summary Judgment of noninfringement of all asserted claims in the above-captioned case. Nintendo's proposed Motion for Summary Judgment is as to *all* claims in *all* three patents-in-suit, is based on the parties' *agreed* claim constructions, and will end the case on its merits, saving the Court and the parties significant resources. This is particularly significant here as ThinkOptics is currently asserting *seventy-one* claims across three patents.

Nintendo's proposed Motion for Summary Judgment will rely, in part, on evidence from the third-party manufacturer for the component at issue — a Taiwanese company called Pixart. Nintendo disclosed Pixart in its initial disclosures served almost one year ago, and again in its responses to interrogatories. ThinkOptics has yet to take discovery from Pixart. Still, to the extent ThinkOptics believes that it needs discovery from Pixart to respond to Nintendo's proposed motion, Nintendo will work with ThinkOptics to expedite a deposition (in Taiwan) of the Pixart witness. Nintendo will also work with

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Hon. Leonard Davis
May 13, 2013
Page 2

ThinkOptics to agree upon a briefing schedule that allows ThinkOptics sufficient time to depose the Pixart witness and prepare its opposition brief.

1. *The parties agree that all claims in all three patents require a processor that executes program code instructions.*

As described in the parties' claim-construction briefing, the patents-in-suit — U.S. Patent Nos. 7,796,116; 7,852,317; and 7,864,159 — concern systems and methods for "absolute pointing." In short, the absolute-pointing systems described in the patents include a hand-held device that has a camera in it. The camera takes a picture of light markers that are placed on or near a display, and then a processor inside the hand-held device calculates where those markers appear on the camera's pixelated sensor. The system translates the markers' processed position on the sensor into a position where the hand-held device is pointing.

The parties agree that *every* claim in the patents requires a processor to process the images on the pixelated sensor. Each system claim includes a processor (or image processor) for processing the location of the markers on the pixelated sensor, and each method claim requires the step of processing the location of the markers on the pixelated sensor.

The parties also agree on the construction of the processor-related limitations. The parties agree that these terms mean:

| Claim Term | Asserted Claims | Agreed Construction |
|---|---|---|
| "image processor"/ "processor"/ "a processor for [performing the following operations] [to process/for processing] the image data" | All independent claims in the '159, '317, and '116 patents | "Logic circuitry designed to execute program code instructions" |
| "process[ing/ed]" | All independent claims in the '159, '317, and '116 patents | "Execut[e/ing/ed] program code instructions" |

Hon. Leonard Davis
May 13, 2013
Page 3

In short, the parties agree that every claim in all three patents must include a processor (or the step of processing) in which logic circuitry executes program code instructions to process the image data on the pixelated sensor.

2.   *The undisputed facts demonstrate that the accused products do not have a processor that executes program code instructions.*

The undisputed facts demonstrate that the accused products do not have a processor (or perform the step of processing). ThinkOptics accuses Nintendo's Wii and Wii U products of infringing the patents-in-suit. The component of the Wii and Wii U that ThinkOptics identifies as meeting the processor limitation is a module designed by Pixart found inside the Wii Remote.

The Pixart module does not have a processor. Rather, the module includes dedicated logic circuitry. The Pixart module has no memory to store program-code instructions, and does not — because it cannot — execute program-code instructions, as required by the agreed claim constructions.

The patents specifically and expressly distinguish dedicated logic circuitry — like Pixart's — from the processor of the claims. The patents state,

> A processor is understood to be logic circuitry designed to execute program code . . . instructions. . . . Conceivably, processor/controller 1104 could be replaced with dedicated logic circuitry designed to perform the applicable mathematical calculations and/or marker image position detection functions.[1]

Because (1) each claim in the patents requires a processor (or the step of processing), and (2) the Pixart module does not have a processor, Nintendo is entitled to judgment as a matter of law that it does not infringe any claim of the patents-in-suit.

3.   *ThinkOptics cannot rely on the doctrine of equivalents.*

As a matter of law, ThinkOptics cannot resort to the doctrine of equivalents to sweep in Pixart's dedicated logic circuitry. For more than a decade since at least *Johnson & Johnston Assoc. Inc. v. R.E. Service Co.*, the Federal Circuit has held that "when a patent

---

[1]   All three patents share the same specification. All citations herein are to the '116 patent. '116 patent at 12:35–46.

Hon. Leonard Davis
May 13, 2013
Page 4

drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public."[2] The patentee cannot recapture dedicated matter through the doctrine of equivalents. "Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'"[3] Thus, where a patent drafter discloses equivalents, but does not claim them, the patentee cannot later recapture those equivalents under the guise of the doctrine of equivalents.[4]

Here, the patentees specifically disclosed using dedicated logic circuitry *in place of* a processor. The specification explicitly states as much: "Conceivably, processor/controller 1104 *could be replaced* with dedicated logic circuitry designed to perform the applicable mathematical calculations and/or marker image position detection functions."[5] Yet, the claims only claim processors or the step of processing using a processor. So, as a matter of law, ThinkOptics cannot recapture dedicated logic circuitry as an equivalent to processors, as the patentees dedicated that claim scope to the public. Thus, even assuming that ThinkOptics could show that dedicated logic circuitry is equivalent to a processor — it cannot — ThinkOptics cannot rely on the doctrine of equivalents to cover the Pixart module.

4.    *Summary Judgment is the efficient way to resolve this case.*

Entertaining Nintendo's Summary Judgment Motion now is the most efficient way to resolve this case. This case involves three patents and more than seventy claims, and this Motion reaches them all. Further, just last week, ThinkOptics proposed to take depositions in Japan for approximately three weeks. This is a substantial expense that can be avoided by entertaining Nintendo's Motion for Summary Judgment. The Motion will focus the parties' disputes on one of the key issues in the case, and avoid hundreds of thousands of dollars in unnecessary discovery costs.

*Conclusion*

Nintendo is entitled to judgment as a matter of law. The parties have agreed that all of the claims in all of the patents-in-suit require a processor (or the step of processing). The

---

[2]     285 F.3d 1046, 1054 (Fed. Cir. 2002).

[3]     *Id.* (quoting *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997)).

[4]     *Id.*

[5]     '116 patent at 12:35–46 (emphasis added).

Hon. Leonard Davis
May 13, 2013
Page 5

parties have agreed that a processor must execute program-code instructions. The undisputed facts demonstrate that the accused devices do not have a processor capable of executing program code instructions. Further, ThinkOptics is precluded, as a matter of law, from relying on the Doctrine of Equivalents to capture the Pixart logic device as equivalent to a processor. As such, ThinkOptics cannot, as a matter of law, establish infringement. This fact will not change as the case plays out over the next year or so, while the parties are spending hundreds of thousands of dollars in unnecessary discovery.

To the extent ThinkOptics believes that it needs Federal Rule of Civil Procedure 56 discovery directed to the non-existence of a processor, Nintendo will work with ThinkOptics to make a witness from Pixart available for deposition (in Taiwan) to testify that the Pixart module does not have a processor capable of processing program-code instructions as required by the parties' agreed construction. Further, Nintendo will agree to a briefing schedule that permits ThinkOptics sufficient time to take the Pixart deposition, and file its opposition brief.

Because Nintendo's proposed Motion for Summary Judgment resolves this case on the merits and avoids needless and expensive international discovery, Nintendo respectfully requests the Court's leave to file its Motion for Summary Judgment.

Very truly yours,

Grant E. Kinsel

GEK

c: All counsel of record by ECF