IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **THINKOPTICS, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CASE NO. 6:11-CV-455 |
| § | |
| **NINTENDO OF AMERICA, INC., et al.,** § | |
| § | |
| Defendants. § | |
| § | |

## ORDER

Before the Court is Nintendo of America, Inc. and Nintendo Co., Ltd.'s (collectively, "Nintendo") Motion to Exclude the Testimony of Christopher Bokhart (Docket No. 321). The Court heard arguments regarding this Motion on May 15, 2014. Based on the parties' briefings and arguments, the Motion is **GRANTED**.

## BACKGROUND

ThinkOptics, Inc. ("ThinkOptics") filed this lawsuit on September 2, 2011, accusing several Defendants of infringing three patents: U.S. Patent Nos. 7,796,116; 7,852,317; and 7,864,159. The three patents share a common specification and are directed to systems and methods for displaying and moving a cursor on a screen using a handheld pointing device. All defendants other than Nintendo have since been dismissed. The accused products encompass Nintendo Wii consoles that operate with the Wii Remote, Wii Remote Plus, and the Wii Sensor Bar.

On October 28, 2013, ThinkOptics' damages expert, Christopher Bokhart, issued a damages report regarding Nintendo's alleged infringement. Docket No. 321, Ex. 1 ("Bokhart

Report"). Mr. Bokhart's report evaluates the profitability of the accused products, examines prior licenses, attempts to estimate the cost of the next best alternative, and analyzes the *Georgia-Pacific* factors. *Id.* at 24–38. The report concludes, "[b]ased on all of the information discussed in [the] report," the appropriate measure of damages is a reasonable royalty of $5.00 per allegedly infringing console sold. *Id.* at 38–41. Mr. Bokhart alternatively expresses this royalty as $3.25 per remote sold. *Id.* at 40 n.143.

## APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702. Such testimony is only admissible if "[1] the testimony is based on sufficient facts or data; [2] the testimony is the product of reliable principles and methods; and [3] the expert has reliably applied the principles and methods to the facts of the case." *Id.*; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93 (1993). In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To that end, any step an expert takes in formulating his opinion "that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

However, the district courts are not "intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1078 (5th Cir. 1996); FED. R.

EVID. 702 (advisory committee notes, 2000 amendments). "Vigorous cross–examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, if a party offering expert testimony can prove by a preponderance of the evidence that the expert is qualified, the expert's testimony is relevant, and the testimony is reliable, a court should not exclude it. *Id.* at 590–91.

## ANALYSIS

Nintendo argues that the damages opinion reflected in Mr. Bokhart's report should be excluded because the report applies the entire market value rule without demonstrating the requirements for applying the rule. ThinkOptics responds that, even though Mr. Bokhart's report does not apply the entire market value rule, the requirements to do so are met. Docket No. 364 at 10. This is because, according to ThinkOptics, the accused direct pointing technology primarily enables "active play," which drives demand for the accused Wii system. *Id.* at 10, 12.

The asserted connection between the accused direct pointing technology and "active play" is incomplete. In addition to the accused pointing technology, "active play" uses non-accused components, such as accelerometers and gyroscopes. Docket No. 321, Ex. 3 at 140:8–9. In fact, in certain instances, "active play" does not use the accused direct pointing technology at all. *Id.* at 158:19–159:5. Accordingly, Mr. Bokhart's report does not justify application of the entire market value rule.

ThinkOptics also denies that Mr. Bokhart's royalty figure is based on the entire market value of the accused products. It contends Mr. Bokhart's report is similar to expert testimony held not to invoke the entire market value rule in *Ericsson Inc., et al. v. D-Link Corp., et al.*, No. 6:10-cv-473, 2013 U.S. Dist. LEXIS 71564 (E.D. Tex. May 20, 2013). Docket No. 364 at 6.

3

In *Ericsson*, the disputed damages analysis was based solely on eight previous licenses involving the asserted patents. 2013 U.S. Dist. LEXIS 71564, at *9, *13. The revenue from those licenses was "attributable only to the value [the licensed] patents add[ed] to the licensees' end products; it [wa]s not attributable to the end products as a whole." *Id.* at *16. The damages expert in *Ericsson* also made "a realistic and thorough attempt" to extract the value of non-asserted patents from those licenses. *Id.* at *13–15. Thus, the revenue base in that case was limited to "the market value of the *contribution of the asserted patents* to the end products"—not the market value of the end products as a whole. *Id.* at *16 (emphasis added).

Like in *Ericsson*, to determine the royalty rate in this case, Mr. Bokhart considers a license that covers the asserted patents. Bokhart Report at 29–30. However, unlike in *Ericsson*, Mr. Bokhart also considers total profits from accused and unaccused products. *Id.* at 25–28, 38–41. As discussed below, Mr. Bokhart does not disclose how he apportions those end product profits. Thus, the Court is unable to determine whether Mr. Bokhart uses the entire market value of the accused Wii console as his royalty base.

Because Mr. Bokhart's apportionment methodology, if any, is not disclosed, his report is excluded. Mr. Bokhart's royalty rate is based, at least in part, on the total profits of accused and unaccused products. *Id.* Mr. Bokhart states that his report apportions out the profitability of those products' non-accused features by considering the value of the non-accused features "in totality." Docket No. 369, Ex. 2 at 125:20–23. However, the report does not contain an apportionment calculation or otherwise sufficiently explain how Mr. Bokhart isolates the asserted patents' contribution to the total profits of the end products. "[A] reasonable royalty analysis . . . must carefully tie proof of damages to the claimed invention's footprint in the market place." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

Mr. Bokhart's consideration of all the evidence "in totality" is a poor substitute for the required analysis that parses an alleged infringer's profits for patented versus unpatented features. *See* 35 U.S.C. § 284 ("[T]he court shall award the claimant damages adequate to compensate for infringement . . . for the use made of the invention by infringer."). The lack of transparency in Mr. Bokhart's report precludes a finding that it "is based on sufficient facts or data; . . . is the product of reliable principles and methods; and . . . has reliably applied the principles and methods to the facts of the case." *See* FED. R. EVID. 702. The report should explicitly identify how the royalty base is apportioned to include only the value of the asserted patents.

Finally, Nintendo asserts Mr. Bokhart's alternative royalty of $3.25 per remote should be excluded because it depends from his $5.00 per console royalty. To calculate the alternative royalty, Mr. Bokhart simply multiplies the $5.00 per console royalty by the ratio of consoles to remotes. Docket No. 369, Ex. 2 at 137:12–16. Accordingly, Mr. Bokhart's alternative royalty contains the same shortcomings as his primary royalty, and is likewise excluded.

## CONCLUSION

For the reasons set forth above, Nintendo's Motion to Exclude the Testimony of Christopher Bokhart (Docket No. 321) is **GRANTED**. If ThinkOptics intends to rely on Mr. Bokhart's reasonably royalty analysis at trial, Mr. Bokhart must amend his report and recalculate his reasonable royalty in light of the Court's ruling by **June 27, 2014 at 12:00 p.m.** If Mr. Bokhart amends his report, then Nintendo may depose Mr. Bokhart by **June 30, 2014 at 5:00 p.m.** Nintendo is also granted leave to file a supplemental expert report to respond to Mr. Bokhart's amended report by **July 1, 2014 at 5:00 p.m.** ThinkOptics may conduct a deposition relating to Nintendo's supplemental expert report by **July 2, 2014 at 5:00 p.m.**