IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| THINKOPTICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:11-CV-455 |
| | § | |
| NINTENDO OF AMERICA, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is ThinkOptics, Inc.'s ("ThinkOptics") Motion for Partial Summary Judgment of No Invalidity in Light of the Wii System Invention (Docket No. 346). The Court heard arguments regarding this Motion on May 15, 2014. Based on the parties' briefings and arguments, the Motion is **GRANTED**.

## BACKGROUND

ThinkOptics accuses Nintendo of America, Inc. and Nintendo Co., Ltd. (collectively, "Nintendo") of infringing claim 16 of U.S. Patent No. 7,796,116 ("the '116 Patent") and claim 26 of U.S. Patent No. 7,864,159 ("the '159 Patent"). Docket No. 390.[1] The asserted patents share a common specification and are directed to systems and methods for displaying and moving a cursor on a screen using a handheld pointing device. The accused products encompass Nintendo Wii consoles that operate with the Wii remote and the Wii sensor bar.

---

[1] ThinkOptics' original complaint also asserted U.S. Patent No. 7,852,317 ("the '317 Patent") and accused several additional Defendants. ThinkOptics has since narrowed its asserted claims and all Defendants other than Nintendo have been dismissed.

ThinkOptics concedes, for the purposes of this motion, that the invention date for the asserted patents is the filing date of the utility applications on July 21, 2005.[2] Docket No. 346 at 6 n.3. Nintendo concedes the accused commercial Wii system was reduced to practice after that date.[3] However, it argues that the asserted patents are invalid under 35 U.S.C. § 102(g)(2) because, before the critical date, Nintendo invented a developmental version of the commercial Wii system that included every element that is currently accused. That developmental version of the commercial Wii system is referred to as the Wii System Invention ("WSI").

## APPLICABLE LAW

**Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary

---

[2] ThinkOptics contends that it is entitled to an invention date in 2004. Docket No. 346 at 6 n.3. However, Nintendo disputes that date. Recognizing that all evidence must be viewed in the light most favorable to Nintendo in this motion for summary judgment, ThinkOptics presumes in this motion that the invention date for the asserted patents is the filing date of the utility applications on July 21, 2005. *Id.*

[3] Nintendo states that the accused Wii was constructively reduced to practice as early as September 1, 2005 and was actually reduced to practice on May 9, 2006. Docket No. 358 at 18–20.

judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

**Presumption of Validity**

A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Hybritech Inc. v. Monoclonal Antibodies, Inc*., 802 F.2d 1367, 1375 (Fed. Cir. 1986). This presumption places the burden on the challenging party to prove the patent's invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Limited Partnership*, 131 S.Ct. 2238, 2242 (2011); *United States Gypsum Co.*, 74 F.3d at 1212.

**Anticipation**

According to 35 U.S.C. § 102(g)(2), a person shall be entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." While 35 U.S.C. § 102 refers to "the invention," the anticipation analysis is performed on a claim-by-claim basis. *Hakim v. Cannon*

*Avent Group, PLC*, 479 F.3d 1313, 1319 (Fed. Cir. 2007). To anticipate, a prior art reference must disclose every element of the claimed invention either expressly or inherently. *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001). Even though § 102(g)(2) requires that the anticipating reference was made in this country, an exception to that requirement exists. Pursuant to the domestic disclosure rule, "an inventor who 'communicates [his invention] to an agent in the United States . . . may . . . carry the date of his invention back to the day in which it was fully disclosed to such agent in the United States.'" *Amkor Tech., Inc. v. Int'l Trade Com'n*, 692 F.3d 1250, 1256 (Fed. Cir. 2012) (quoting *Scott v. Koyama*, 281 F.3d 1243, 1247 (Fed. Cir. 2002)).

## ANALYSIS

Nintendo argues that the asserted patents are invalid under 35 U.S.C. § 102(g)(2) because Nintendo invented the accused aspect of the Wii system before ThinkOptics' earliest priority date, which ThinkOptics concedes, for the purposes of this motion, to be July 21, 2005. Docket No. 358 at 1; Docket No. 346 at 6 n.3. ThinkOptics asks the Court to grant summary judgment that the asserted patents are not invalid under § 102(g) for three reasons. First, it contends that Nintendo has not shown that the developmental WSI disclosed every element of the claimed invention. Second, ThinkOptics alleges Nintendo has not shown that the WSI is prior art. Third, ThinkOptics argues Nintendo did not disclose its § 102(g) invalidity defense according to the Local Patent Rules regarding invalidity contentions.

**Nintendo Has Not Shown That the Developmental WSI Disclosed Every Claimed Element**

Nintendo alleges it has demonstrated that the developmental WSI discloses every element of the claimed invention by producing sufficient evidence to prove that the developmental WSI included the aspects of the commercial Wii system that are accused in ThinkOptics'

infringement contentions. Docket No. 358 at 1. To support its position, Nintendo relies on the Court of Appeals for the Federal Circuit's decision in *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1365 (Fed. Cir. 2000). The Federal Circuit's decision in *Vanmoor* prohibits plaintiffs from arguing that "a product contains each and every element of the patented invention for infringement purposes, but that the same product does not contain each and every element of the patented invention for invalidity purposes." *U.S. Ethernet Innovations, LLC v. Texas Instruments Inc.*, No. 6:11-cv-491, 2014 WL 1347994, at *2 (E.D. Tex. Apr. 3, 2014) (characterizing the holding in *Vanmoor*) (internal quotations omitted). To that end, the court in *Vanmoor* held that the plaintiff's infringement contentions satisfied the defendant's burden to prove that its asserted reference disclosed every element of the claimed invention. *Vanmoor*, 201 F.3d 1363. Importantly, in *Vanmoor*, the asserted reference and accused products displayed identical "manufacturing specifications, component dimensions, and methods of operation." *Id.* at 1365. The holding in *Vanmoor* has not been extended to cases where the asserted reference and accused products differ in relevant respects. *See U.S. Ethernet Innovations*, 2014 WL 1347994. Infringement contentions satisfy the defendant's burden to prove that its asserted reference discloses every element of the claimed invention only upon a showing that the asserted reference includes the accused aspects of the accused product. *See id.*; *Vanmoor*, 201 F.3d 1363.

To show that the developmental WSI included the accused aspects of the commercial Wii system, Nintendo points out that the developmental WSI had a CMOS image sensor, which is an accused element in the commercial Wii system. Docket No. 358 at 5 (citing Docket No. 361-3, Ex. 18 at 19). However, Nintendo's citation to the CMOS image sensor shows only that it satisfies one of the ten elements outlined in ThinkOptics' infringement contentions for one of ThinkOptics' two asserted claims. *See* Docket No. 361-3, Ex. 18 at 5–29. This evidence is

5

insufficient to show that the developmental WSI included all of the accused aspects of the commercial Wii system.

Next, Nintendo cites its invalidity expert, Dr. Gregory Welch, who stated in his report and later confirmed that "'[i]t is [his] understanding that Nintendo had invented and developed the optical pointing aspects of the accused products in late 2004 and early 2005.'" Docket No. 359-4, Ex. 7 at 113:8–16 (Dr. Welch testimony affirming his report); Docket No. 358 at 8. However, Dr. Welch's understanding is not supported. Therefore, it is not competent summary judgment evidence. *See Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533. Further, the relevant inquiry is not whether Nintendo had invented the accused aspects of the commercial Wii by the critical date, but whether the developmental WSI contained those accused aspects. Because Dr. Welch's statement is unsupported and does not address the relevant inquiry, the statement does not help show that the developmental WSI included the accused aspects of the commercial Wii system.

Nintendo also cites the testimony of its employee, Akio Ikeda. Nintendo states that Mr. Ikeda "testified that the differences between an April 2013 prototype Wii Remote and the commercial version of the Wii Remote relate to aspects not at issue in the asserted claims." Docket No. 358 at 8 (citing Docket No. 359-5, Ex. 8 at 213:8–14). It also claims Mr. Ikeda testified about specific features of that Wii remote prototype. *Id.* Like Dr. Welch's statement, Mr. Ikeda's testimony does not address the relevant inquiry. It compares the commercial Wii system to an "April 2013 prototype," instead of to the developmental WSI as it existed before the critical date in 2005. Accordingly, Mr. Ikeda's testimony does not help show that the developmental WSI included the accused aspects of the commercial Wii system before the critical date.

Further, Nintendo cites to documentary evidence. According to Nintendo, several revisions of its "Nintendo Revolution controller Core plan" were published before the critical date. *Id.* at 9. Nintendo maintains that these documents show a console and remote that used the DPD to identify the location of markers near a display for optical pointing. *Id.* It also cites a document dated May 19, 2005 that purportedly references tests to a "motion tracking system" that is consistent with the Wii remote specifications. *Id.* at 9–10. However, Nintendo does not explain how these documents directly link the developmental WSI to ThinkOptics' infringement contentions. Therefore, they do not help show that the developmental WSI included the accused aspects of the commercial Wii system.

Finally, Nintendo asserts it developed the portion of the accused Wii console prior to the critical date. Docket No. 358 at 12. Specifically, it alleges that its employee, Keizo Ohta, "testified that in May 2005 he developed two programs that evolved into the accused programs used for processing the information provided by the DPD." *Id.* at 12. Again, this testimony does not address the relevant inquiry. The assertion that two programs "evolved into" the programs used in the commercial Wii system does not show that those programs, before they evolved, included the accused aspects of the programs used in the commercial Wii system. Thus, Mr. Ohta's testimony does not help show that the developmental WSI included the accused aspects of the commercial Wii system before the critical date.

Nintendo has not produced evidence sufficient to show that the developmental WSI included the accused aspects of the commercial Wii system. Accordingly, ThinkOptics' infringement contentions do not satisfy Nintendo's burden to prove that the developmental WSI disclosed every element of the claimed invention.

**Nintendo Has Not Shown That the Developmental WSI Is Prior Art**

Nintendo alleges it satisfies its burden to show that the developmental WSI was "communicate[d] . . . to an agent in the United States" before the critical date because Nintendo disclosed the developmental WSI to Broadcom employees who were based in the United States. Docket No. 358 at 2; *see Amkor Tech.*, 692 F.3d at 1256 (internal quotations omitted). Nintendo asserts that during a meeting on April 13, 2005, Nintendo and Broadcom discussed an overview of the Wii remote. Docket No. 358 at 14. However, this meeting took place in Japan, not the United States. Docket No. 447 at 57:12–13. Accordingly, the disclosure that took place during that meeting did not communicate the developmental WSI "to an agent in the United States," as the domestic disclosure rule requires. *See Amkor Tech.*, 692 F.3d at 1256; *Scott*, 281 F.3d at 1247 (holding the asserted reference was communicated in the United States where a full description of the reference was contained in written materials disclosed to persons in Wilmington, Delaware).

**Nintendo's Invalidity Contentions Are Insufficient Under the Local Rules**

ThinkOptics argues Nintendo did not disclose its § 102(g) invalidity defense according to the Local Patent Rules regarding invalidity contentions. Docket No. 365 at 2. In their invalidity contentions, parties asserting prior art under 35 U.S.C. § 102(g) are required to "provid[e] the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s) . . . ." Local Patent Rule 3-3(a).

Nintendo argues the invalidity contentions it served August 18, 2012 and October 7, 2013 identified its § 102(g) invalidity defense. Docket No. 358 at 4 n.5. According to Nintendo, those contentions read, in relevant part:

> '[A]s it pertains to Plaintiff's apparent allegations regarding the ['116, '317, and '159 Patents], Nintendo developed the Wii console, Wii remote, and Wii Sensor

Bar prior to the earliest applicable priority date for the ['116, '317, and '159 Patents].'

*Id.*

Nintendo's invalidity contentions did not identify Broadcom's role in the April 13, 2005 disclosure. Accordingly, they did not "provid[e] the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s)," as the Local Patent Rules require.

## CONCLUSION

Nintendo has not produced evidence sufficient to show that the developmental WSI disclosed every element of the claimed invention. Nor has it produced sufficient evidence to show that it communicated the developmental WSI to an agent in the United States before the critical date. Further, Nintendo did not disclose its § 102(g) invalidity defense according to the Local Patent Rules. Accordingly, ThinkOptics' Motion for Partial Summary Judgment of No Invalidity in Light of the Wii System Invention (Docket No. 346) is **GRANTED**.

**So ORDERED and SIGNED this 3rd day of July, 2014.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**